**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ROBERT MARINCIL,

          Plaintiff,

v.                                 CIVIL ACTION NO.  2:08-cv-01300

SAMINCO, INC.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendant's Motion for Summary Judgment, filed on August 24, 2009 [Docket 29].  The plaintiff filed his Response on September 8, 2009 [Docket 32], and the defendant filed its Reply on September 16, 2009 [Docket 33].  As explained below, the court **GRANTS** the defendant's Motion.

**I.  Factual and Procedural History**

In early 2007, the defendant, Saminco, Inc., advertised a job opening for a field service tech to work in its Logan, West Virginia facility.  The plaintiff, Robert Marincil, responded to the advertisement by calling Gary Beard, a Saminco employee, who was conducting interviews for the position.  In late January 2007, Beard and Marincil met in person to discuss the position.  Beard explained to Marincil that the position required substantial physical ability—being able to lift 75 to 100 pounds, stand on concrete floors while working, in addition to welding and cutting, frequent overnight travel, and occasional underground work.  (Marincil Dep. 80:2-81:7.)  During their meeting, Marincil told Beard that he "felt like" he could do the work (*id.* 86:4-5), but in later phone

calls he stated that he would like to try the job for a couple of months to make sure. (*Id.* 86:6-15.) Marincil also told Beard that he was on Social Security disability and that he was taking pain medicine for severe back pain. (*Id.* 82:2-19; 88:8-18.)

At the conclusion of his interview with Beard, Marincil had not been offered the job, although he felt like he was a top candidate. (*Id.* 86:16-23.) Beard, however, decided not to recommend that Marincil be hired. (Beard Dep. 33:17-18.) Ultimately, Saminco did not hire Marincil, or any other person, to fill the field service tech position that had been advertised. (Beard Dep. 33-34.) After being rejected by Saminco, Marincil unsuccessfully sought employment with several other employers. (Marincil Dep. 109:7-120:16.)

Marincil has been receiving Social Security disability payments since June 30, 2001, for chronic low-back problems.[1] He receives approximately $2600 per month in disability payments. In applying for these benefits, he has told the Social Security Administration that he was "totally disabled for any substantial gainful activities." (*Id.* 46:12-18, Ex.1) He admits that he remains on disability, and that his status as being totally disabled has not changed. (*Id.* 47:7-18.) Although Marincil's physician has stated that he would be willing to provide one, no physician has ever provided Marincil with a written release to work, nor has he sought one. For pain relief, Marincil takes 240 milligrams of oxycodone and 500 milligrams of ibuprofen per day. (*Id.* 35:9-19.) In early 2008, Marincil started his own business, while continuing to draw disability payments from the federal government. (*Id.* 17:16-19:14.) Marincil continues to have medical problems. On May 22, 2008, Dr. David Caraway authored a report stating that he recommended that Marincil enter a drug

---

[1] To manage the pain related to his back condition, Marincil takes 240 mg of oxycodone and 500 mg of ibuprofen per day.

rehabilitation program. (*Id.* 147:1-11, Ex. 5.) Another physician, Dr. Thomas Scott, wrote a report on January 16, 2008, that Marincil has "residual subjective complaint of low back pain and left radicular pain." (*Id.* Ex. 6.)

On March 13, 2008, Marincil filed suit in the Circuit Court of Mingo County, West Virginia, claiming disability and age discrimination against Saminco and two Saminco employees under the West Virginia Human Rights Act. The individual employees were dismissed as defendants, and Saminco, a Florida corporation, removed the case to this court on November 19, 2008.

## II. Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in

support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

## III. Discussion

Marincil claims that Saminco discriminated against him based on his disability and age in violation of the West Virginia Human Rights Act, W. Va. Code sect. 5-11-9 (the "HRA"). By his claims, Marincil seeks a panoply of relief, including damages for lost wages and benefits, front pay, indignity, embarrassment, humiliation and emotional distress, as well as punitive damages. (Compl. 3 at ¶¶ 1-3.)

The HRA prohibits employers from discriminating against qualified individuals "with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such person is . . . handicapped." W. Va. Code sect. 5-11-9(1). The HRA "protects persons with impairments from being denied employment by virtue of an employer's hostility to those who are disabled or its stereotypical assumptions about their capabilities." *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d 561, 573 (W. Va. 1996). To prevail under the HRA, a plaintiff must present a prima facie case by showing that he (1) is a qualified person with a disability, (2) is qualified to perform the essential function of the job, (3) and that he has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises. *Id.* at 581 n.22. If the plaintiff makes a prima facie showing, then the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for

its actions. The burden then returns to the plaintiff to prove that the defendant's stated reasons are a pretext for discrimination.

To be a qualified individual under the HRA, a plaintiff must show that he "is able and competent, with reasonable accommodation, to perform the essential functions of the job in question." *Syl. Pt. 1, Coffman v. W. Va. Bd. of Regents*, 386 S.E.2d 1 (W. Va. 1988). The West Virginia Supreme Court of Appeals has explained that "'[t]he 'able and competent' requirement means that an employer has the right to not hire . . . employees who are unable to perform a job because . . . they have a handicap that impedes job performance, subject to the '*reasonable accommodation*' requirement." *Williams v. Charleston Area Med. Ctr., Inc.*, 592 S.E.2d 794, 798 (W. Va. 2003) (quoting *Ranger Fuel Corp. v. W. Va. Human Rights Comm'n*, 376 S.E.2d 154, 159 (W. Va. 1988) (emphasis and alteration in original)). Whether a "reasonable accommodation" exists is determined on a case-by-case basis. *Id.* at 799. Importantly, "an employer's duty to accommodate an individual with a disability under the West Virginia Human Rights Act does not require the employer to eliminate an essential function of a job." *Id.* (internal citations omitted).

Here, Marincil cannot prevail because he cannot show that he was "able and competent" to perform the requirements of job he sought. In a submission to the Social Security Administration, Marincil attested that he was "totally disabled for any substantial gainful activities." (Marincil Dep.46:12-18, Ex. 1.) Furthermore, he has admitted that he remains totally disabled, and that he has not attempted to change his disability status with the Social Security Administration. (*Id.* 47:2-18.) He acknowledges that he continues to suffer from chronic low-back pain, and that he takes daily doses of oxycodone and ibuprofen to manage the pain. (*Id.* 61:20-62:13.) Despite taking these pain relievers, Marincil remains in pain throughout the day. (*Id.* 149:13-22.)

The job at Saminco for which Marincil interviewed was physically demanding. Marincil admitted to Beard that he was unsure if he could do the work. He even asked Beard if he could just try the job out for several months, and then if he was unable to do it, he would just remain on disability.[2] (*Id.* 86:6-15; Beard Dep. 48:20-49:2.) Furthermore, Marincil has never sought nor obtained a release from his physician authorizing him to return to work.[3] (Marincil Dep. 71:20-72:3.) In such circumstances, Marincil has failed to make a prima facie showing that he was "able and competent" under the HRA. With regard to his age discrimination claim, Marincil has failed to present any evidence that he was not hired because of his age. As such, Saminco is entitled to summary judgment.

The court **GRANTS** Saminco's Motion for Summary Judgment [Docket 29], and **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                ENTER:       September 29, 2009

*Joseph R. Goodwin, Chief Judge*

---

[2] Beard testified to the unusual nature of Marincil's request to try out the job for a few months, noting the specialized training required for the job. (Beard Dep. 49:3-12.) Beard stated that he was "not looking for somebody to try out to see whether they wanted to work again or not." (*Id.* 51:5-7.)

[3] In his Response, Marincil claims that he could have obtained a physician to authorize his return to work, and he has presented the testimony of a doctor stating that Marincil could have performed the work required by Saminco. (Response 5-6.) Importantly, however, Marincil remains on total disability with the Social Security Administration, and he has never sought a physician's permission to return to work. In light of these facts, Marincil's assertions fall flat.